Steffen, C. J.,
with whom Springer, J., joins, dissenting:
Respectfully, I dissent.
I fully agree with the district court and will therefore adopt its reasoning and decision as the primary basis for my dissent. There are, however, a few observations that I consider worthy of comment.
Under the Collective Bargaining Agreement (CBA), Article 4(C), the following fundamentally sound declaration appears: “The City shall have the ultimate right and responsibility of the local government employer to manage its operation in the most efficient manner consistent with the best interests of all its citizens, its taxpayers and its employees.” See NRS 288.150(5). It is uncontroverted that firefighter trainees are probationary employees. Although the position of firefighter trainee is listed in the CBA among the classifications within the Non-Supervisory bargaining unit, at no place in the CBA does it suggest that firefighter trainees are subject to the grievance procedure available to regular employees.
It would utterly defeat the purposes for which probationary periods of employment are created if the Union’s position were to prevail. First and foremost among the reasons for probationary service is to allow the employer (and to a lesser extent the employee) to evaluate the prospective regular employee without concern over costly contests in the event the employer concludes that the probationary employee is not sufficiently qualified or suitable for the position. It hardly needs comment that the position taken by the Union and the majority will subject the City to costly dispute resolutions that will disserve the obligation and responsibility of the City to “manage its operation in the most efficient manner consistent with the best interests of its citizens, its taxpayers and its employees.” The majority has effectively undermined the obligation of the City to manage its resources wisely and at minimal cost to its taxpayers.
The record reflects, in a prior arbitration proceeding, that the Union acknowledges that the Positive Discipline Manual (PDM) (erroneously referred to by the arbitrator as the “Progressive Discipline Manual”) adopted by the City’s Department of Fire Services was mutually negotiated as one of the bases upon which the disciplinary measures taken against firefighters were covered *1326 under the terms of the CBA. The PDM states that the positive discipline system does not apply to employees who have not completed their probationary period. Moreover, the PDM specifically states that while an employee is on probationary status, either the employee or the organization can terminate the relationship without notice or undergoing any disciplinary steps.
The Standard Operating Procedures (SOP) of the Las Vegas Fire Department provide, inter alia, that all trainees are probationary employees, that a probationary employee who is not confirmed as a regular employee shall be terminated, and that the Appeals and Hearings procedures available to regular employees shall have no application to probationary employees. Moreover, the SOP is specifically recognized in the CBA as binding on employees covered by the CBA if consistent with the CBA and the Nevada Revised Statutes. The SOP provisions exempting probationary employees from Appeals and Hearings, and the provision in the PDM providing for the right to terminate such employees without notice or engaging the disciplinary system to which regular employees are entitled, do not conflict with either the CBA or the Nevada Revised Statutes.
Moreover, since the CBA requires that the City provide the Union with any changes or updates to the SOP, and also provides the Union with the right to challenge any such changes or updates, it is telling that the aforementioned provisions were not, at least at some point, challenged by the Union.
I view as significant, the representation by the City in support of its Motion for Stay of Arbitration Proceedings that “[i]t has been consistently and continuously held that the Labor Agreement and the grievance procedure contained therein does not apply to a non-regular, i.e. probationary employee of the Department of Fire Services.” It appears that the Union has not seriously controverted that proposition, for the Union attempts to find something significant in its contention that the City did not, as alleged, simply deny confirmation as a regular employee to Sorenson, but instead terminated him prior to the expiration of his probationary period.
I have great difficulty understanding the logic behind the position that the City may, as specified in the SOP, “terminate a probationary employee through non-confirmation of regular employee status” — as the Union apparently accepts — but may not, prior to the expiration of a probationary period, terminate the employee after having determined that the employee will not be retained and confirmed as a regular employee. Apparently the Union believes that, despite the clear language to the contrary in the PDM indicating that a probationary employee may be terminated without formal notice, such an employee, no matter how *1327 unsatisfactory or unsuited to the position, is entitled to remain employed until the end of the probationary period.
I find it interesting that the Union points to NRS 288.150(2) and the inclusion of “discharge and disciplinary procedures” among the scope of subjects of mandatory bargaining as support for the syllogism that since the statute includes the subject among its list of mandatory bargaining items, and since the CBA also mandates that its purview cover the same items, the subject of Sorenson’s termination was arbitrable. By the same reasoning, since the mandatory scope of bargaining under NRS 288.150(2) is limited to the enumerated items, and since the subject of probationary employment was not on the list, probationary employment is not a matter for negotiation or arbitration. Indeed, NRS 288.150(3)(c) also provides that “[tjhose subject matters which are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation included . . . [t]he right to determine . . . work performance standards . . .
Discharge and disciplinary procedures properly apply to regular employees. They do not apply to probationary employees since, by definition, such an employee is on trial, and if he or she does not prove himself or herself qualified, the termination is not a form of discipline, but simply an exercise of the right to evaluate the probationer’s work performance and terminate the employee for not measuring up to the requirements or expectations of regular employee status. In short, there is no occasion for developing “discharge and disciplinary procedures” for probationary employees who are subject to termination simply because they have failed to qualify for regular employment. To assign to such employees the entire panoply of disciplinary procedures designed to assure fairness to regular employees prior to their discharge would be such a costly waste as to undermine the entire purpose for a probationary period of employee evaluation. In effect, the Union seeks to equate the “engagement” with the “marriage.” I suggest that it not only defies logic, but it is counterproductive and a waste of the public fisc.
Finally, the mere fact that firefighter trainees are included within the CBA does not to any degree include them, without mention, in the grievance and disciplinary coverage of the CBA. Their inclusion in the CBA can otherwise be meaningful in assuring them such opportunities as the right to vote on matters of concern to the Union.
For the reasons articulated by the district court, and in further consideration of the abbreviated discussion set forth above, I strongly disagree with the majority and would affirm the order of the district court staying the arbitration proceedings.